UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CLARICOM NETWORKS, L.L.C., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 04 C 4906 |
| ) | Judge George M. Marovich |
| ILLINOIS BELL TELEPHONE COMPANY ) | |
| d/b/a/ SBC ILLINOIS, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Claricom Networks, L.L.C. ("Claricom") filed a twelve-count complaint against defendant Illinois Bell Telephone Company d/b/a SBC Illinois ("SBC"). In its original complaint, Claricom asserted violations of the Communications Act, 47 U.S.C. § 151 et. seq., and various state law claims, including breach of contract, misrepresentation, conversion, tortious interference, negligence and unjust enrichment. The Court previously dismissed plaintiff's claims for misrepresentation, conversion and negligence. Because the defects with those claims might have been curable, the Court granted Claricom leave to amend. Claricom filed an amended Count VI for fraudulent inducement. Defendant moves pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for an order dismissing plaintiff's amended Count VI. For the reasons set forth below, the Court grants defendant's motion to dismiss and dismisses without prejudice Claricom's amended Count VI.

**I.      Background**

For purposes of this motion to dismiss, the Court takes as true the allegations in the complaint. The Court also considers the interconnection agreement referenced in and attached to

plaintiff's complaint. The interconnection agreement may be considered by the Court without converting the motion to dismiss into a motion for summary judgment because the document is referenced in the amended complaint, is relevant to plaintiff's claims and does not require discovery to authenticate or disambiguate. *Tierney v. Vahle*, 304 F.3d 734, 739 (7th Cir. 2002). The Court has previously outlined the facts alleged in this case and repeats them here only to the extent necessary for the consideration of the current motion to dismiss.

Congress passed the Telecommunications Act of 1996 to "'promote competition and reduce regulation in order to secure lower prices and higher quality services for American telecommunications consumers and encourage the rapid deployment of new telecommunications technologies.'" *Goldwasser v. Ameritech Corp.*, 222 F.3d 390, 393 (7th Cir. 2000) (quoting *Preamble to Telecommunications Act of 1996*). Sections 251 and 252 of the Telecommunications Act set out duties of carriers to interconnect. Under § 251, a local exchange carrier ("LEC") is required to resell telecommunications services on reasonable and nondiscriminatory terms, to provide number portability, to provide dialing parity, to afford access to rights-of-ways and to establish reciprocal compensation arrangements. 47 U.S.C. § 251(b). In addition to those requirements, an incumbent local exchange carrier ("ILEC") must also negotiate in good faith agreements to carry out the duties of § 251(b), provide unbundled access on reasonable and nondiscriminatory terms, and provide at wholesale rates to competitors any services they offer at retail. 47 U.S.C. § 252(a). Any interconnection agreement reached between an ILEC or LEC and a reseller must be approved by the relevant state commission. 47 U.S.C. § 252(e). Once approved, the ILEC must make the same services available to any other

telecommunications carrier upon the same terms and conditions as are provided in the interconnection agreement. 47 U.S.C. § 252(i).

SBC is an ILEC in Illinois. SBC sells telephone exchange services on a retail basis to its own customers and on a wholesale basis to resellers such as Claricom. Claricom is a Certified Local Exchange Carrier ("CLEC"). Claricom does not own or operate any telecommunications facilities of its own. Rather, it purchases telephone exchange services from SBC (among others) and resells those telephone exchange services. In 1998, Claricom began purchasing and reselling SBC services according to the terms of the interconnection agreement attached to the complaint.

Claricom alleges that it marketed certain services and acquired certain customers in Illinois. Certain of Claricom's customers had previously executed with SBC agreements that included term and minimum usage commitments. Claricom claims that SBC required it to assume the term and minimum usage commitments made by Claricom's customers. SBC ultimately won back some of the customers by (1) using Claricom's confidential, proprietary information and (2) offering those customers retail packages superior to the service and rates SBC made available to Claricom on a wholesale level. SBC has demanded that Claricom continue to pay the full amount of any minimum usage commitment for customers who were once Claricom customers but are now SBC customers.

Claricom implies in its complaint that it stopped paying for these services. It alleges that SBC informed Claricom by letter in June 2004 that SBC would disconnect services to Claricom if Claricom failed to pay billed amounts by mid-June 2004. In addition, SBC stopped processing additional Claricom service orders.

In its amended Count VI, Claricom alleges that SBC misrepresented its intent to protect Claricom's proprietary information. Claricom alleges that SBC made the misrepresentation in Section 20 of the Interconnection Agreement and that when it made the representation, it knew the representation to be false. Claricom further alleges that SBC intended for Claricom to rely on the representation and that it relied upon the representation in deciding to take service from SBC. According to the complaint, SBC has "repeatedly used proprietary information supplied by Claricom for the purpose of soliciting those customers to take service directly from SBC[.]"

## II. Standard on a motion to dismiss

The Court may dismiss claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure if the plaintiff fails "to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). In considering a motion to dismiss, the Court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in the plaintiff's favor. *McCullah v. Gadert*, 344 F.3d 655, 657 (7th Cir. 2003). On a motion to dismiss, the "issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Cole v. U.S. Capital, Inc.*, 389 F.3d 719, 724 (7th Cir. 2004) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

## III. Discussion

To be actionable under Illinois law, a misrepresentation must be of a fact. *Prime Leasing, Inc. v. Kendig*, 332 Ill.App.3d 300, 309 (1st Dist. 2002). Misrepresentations of the intent to perform future conduct, by contrast, are not actionable as fraud. *HPI Health Care Services, Inc. v. Mt. Vernon Hosp., Inc.*, 131 Ill.2d 145, 168 (Ill. 1989). "Even a false promise of future conduct with no current intent to fulfil that promise will not constitute fraud." *Prime Leasing*,

332 Ill.App.3d at 309. Illinois law recognizes an exception, however, and a false promise of future performance is actionable if it "is part of a scheme or device to defraud another of her property." *Chatham Surgicore, Ltd. v. Health Care Service Corp.*, 356 Ill.App.3d 795, 826 N.E.2d 970, 977 (1st Dist. 2005).

Such promissory fraud "is a disfavored cause of action in Illinois because fraud is easy to allege and difficult to prove or disprove." *Bower v. Jones*, 978 F.2d 1004, 1012 (7th Cir. 1992). The Seventh Circuit has noted:

> In order to survive the pleading stage, a claimant must be able to point to specific, objective manifestations of fraudulent intent–a scheme or device. If he cannot, it is in effect presumed that he cannot prove facts at trial entitling him to relief. If the rule were otherwise, anyone with a breach of contract claim could open the door to tort damages by alleging that the promises broken were never intended to be performed.

*Bower*, 978 F.2d at 1012 (quoting *Hollymatic Corp. v. Holly Systems, Inc.*, 620 F. Supp. 1366, 1369 (N.D. Ill. 1985). In *Willis v. Atkins*, 412 Ill. 245, 259-260 (Ill. 1952), for example, the Supreme Court of Illinois relied on actions beyond a promise of marriage without intent to perform in allowing a fraud claim. The court explained:

> We are aware of [the general rule that "actionable fraud cannot be predicated upon the mere failure to perform a promise, though there was no intention to perform the promise when made"] but believe it has no application to a situation such as that presented here, where the fraud was perpetrated and the confidence gained not by mere promises but by a course of conduct covering a period of almost twelve years in which appellee, by pretending great interest in the appellant's welfare and devotion to her affairs, secured not only her property but a large measure of his support. During all those years, he came to appellant's home almost daily, ate his meals with her and handled her business affairs. . . . The appellee, by all of his conduct, and not by mere promises, falsely represented that he and the appellant were building together for a rosy future, while all the time he was interested only in what he could get from her.

*Willis*, 412 Ill. at 259-260.

Here, Claricom's Count VI is merely an attempt to convert a breach of contract into a tort. Claricom has failed to allege specific, objective manifestations of fraud or anything from which the Court could infer a scheme to defraud Claricom. The complaint includes no allegations of a conduct beyond the misrepresentation itself, and nothing about the misrepresentation allows the Court to infer a scheme to defraud Claricom. For example, the alleged misrepresentation is a clause in the interconnection agreement, which may never have been negotiated with or even directed specifically to Claricom. Once SBC negotiates an interconnection agreement, it must make those terms available to all other CLECs (of which Claricom is one). It is unclear from the complaint whether the interconnection agreement was originally negotiated with Claricom or whether Claricom just accepted service under a previously existing interconnection agreement.

Nor does the complaint contain any allegations from which the Court might infer a scheme to defraud. The complaint fails to make any allegations that SBC began using the confidential information as soon as Claricom began reselling its services. Such an allegation might raise the inference that SBC never intended to comply with the term of the contract. *See American Hardware Manufacturers Assoc. v. Reed Elsevier, Inc.*, Case No. 03-C-9421, 2004 WL 3363844 at * 6 (N.D. Ill. Dec. 28, 2004) ("the court may infer [fraudulent intent] where a breach of promise occurs soon after the promise is made."). To the contrary, the allegations suggest that the breach did not occur until years later. Nor does Claricom allege that the individuals at SBC who agreed to the terms in the interconnection agreement were the same individuals at SBC who used the proprietary information, which allegations might also have created an inference that SBC intended never to comply with the term.

Because Claricom has failed to allege specific manifestations of fraudulent intent, Claricom's Count VI fails to state a claim upon which relief may be granted. Accordingly, the Court grants defendant's motion to dismiss and dismisses without prejudice Claricom's amended Count VI.

## IV. Conclusion

For the reasons set forth above, the Court grants defendant's motion to dismiss and dismisses without prejudice Claricom's amended Count VI.

ENTER:

George M. Marovich
United States District Judge

DATED: 07/20/2005